ANDREW J. KINDRED

*v.*

JOSEPH STITT *et al.*

1.  ARREST—*by a private person.*  A private person has no right to arrest a person on mere suspicion that he has been guilty of a crime.  A mere suspicion of guilt does not authorize a person, without a warrant, to make an arrest.  A private person should not be justified, unless a crime has been committed, and the person arrested is shown to be the guilty party.

2.  By the common law, any private person, who is present when a felony is committed, is bound to arrest the felon, on pain of fine and imprisonment, if he escapes through his negligence.  But it is hardly considered, under our statute and usual practice in such cases, that this obligation rests upon a private individual, though it would be, doubtless, his duty to attempt an arrest if one could be made without injury or peril to himself.

3.  ARREST—*by an officer—out of his county.*  The fact that a person is a police constable in one county, and a detective, gives him no more official authority to make an arrest, without a warrant, in another county, than is given to a private citizen of another State.

4.  Even when a warrant is issued, its execution is confined to the county in which it issues, except when the offender shall cross the line into an adjoining county the officer may pursue him into such adjoining county, and there make the arrest.

26—51ST ILL.

5. ARREST—*by a private person—course to be pursued.* When a private person has apprehended another for felony, he may either deliver him into the hands of a constable, or he may carry him to any jail in the county; but the safest course is to cause him, so soon as convenience will permit, to be brought before some justice of the peace, by whom the prisoner may be examined and bailed, or committed to prison.

6. PROBABLE CAUSE—*for arrest.* In an action of trespass for an illegal arrest and imprisonment, it appeared that shortly before the arrest, several burglaries had been committed in the neighborhood where the arrest was made, and a few days prior thereto, the plaintiff had been seen in company with noted and suspected characters, and evidence was adduced showing the plaintiff himself had a bad character by report. This was *held*, not to afford probable cause for his arrest by the defendants, neither of them having a warrant, and neither of them an officer of the county authorized to make an arrest without a warrant.

7. MEASURE OF DAMAGES—*in an action for illegal arrest and imprisonment.* What occurred after the arrest, transporting the prisoner to a foreign county, and there confining him in a filthy cell, and discharging him without an examination, the arrest being unjustifiable, are proper to be considered by the jury in estimating the damages.

APPEAL from the Circuit Court of Woodford county; the Hon. S. L. RICHMOND, Judge, presiding.

This was an action of trespass, for an assault and false imprisonment, brought in the court below by Andrew J. Kindred against Stitt, Blair and Towers.

It appears from the evidence that prior to the 5th of October, 1867, several burglaries, and other crimes, had been committed in Woodford county, in this State, and that the plaintiff, Kindred, was suspected of being one of the guilty parties. Accordingly, on the 5th of October, the defendants, Stitt and Blair, citizens of Woodford county, and Towers, a police constable and detective, residing in Peoria county, placed handcuffs upon him and conveyed him to Peoria county, where he was placed in jail, in a filthy cell, and detained there for a period of three days, when he was discharged without an examination, and without having been taken before a magistrate for that purpose. Neither of the parties who participated in the arrest had any warrant therefor.

It seems that the detective, Towers, had been informed, by telegraph, by a citizen of Woodford county, that some horses had been stolen near Eureka, in that county, and upon coming to Eureka, Towers was informed by some of the citizens of the various other crimes which had been committed in the neighborhood, and was employed by them to ferret out the guilty parties. Towers testified that he had been informed that the plaintiff kept company with Chambers, Moss and Mishler—persons of bad character—Chambers and Mishler being supposed to be thieves, and Moss being in the habit of gambling and drinking. It was also proven by several witnesses that a few days before the burglaries were committed, on a Sunday, the plaintiff was seen in Cruger, a place about two miles from Eureka, in company with his brother William, (who was also a suspected character,) and Chambers and Mishner. Evidence was also adduced showing that the plaintiff had a bad character by report.

These were the principal facts relied upon as showing probable cause for the arrest of the plaintiff.

The jury returned a verdict for the defendants, and judgment was entered accordingly. The plaintiff thereupon, appealed, and assigns for error that the verdict was contrary to the law and evidence.

Messrs. HARPER & CASSELL, Messrs. INGERSOLL & McCUNE, and Mr. S. D. PUTERBAUGH, for the appellant, insisted that the arrest was illegal; that under our statute an officer is not authorized to make an arrest out of his proper county without a warrant, and that in this case there was no reasonable ground of suspicion to justify any of the defendants. Counsel also contended that even if all the defendants had authority to make the arrest, it could only be for the purpose of taking the accused before a magistrate for examination. Citing *Dodds et al.* v. *Bowen,* 43 Ill. 95.

Messrs. BURNS & BARNES, for the appellees Stitt and Blair.

An action will not lie against a peace officer for arresting a person, *bona fide*, on a charge of felony, without warrant, though it turn out that no felony was committed. So when one is suspected of receiving stolen goods, he may be so detained without warrant to answer to the charge, and the party arrested may be taken to prison till he can be put upon his examination, without first taking him before a magistrate. 1 Hilliard on Torts, 235; *Samuel* v. *Payne*, 1 Doug. 359; *Rohan* v. *Swaine*, 5 Cush. 281; *Davis* v. *Russell*, 2 Moore & Payne, 590; 3 Eng. Com. Law 190; 9 do 688; 12 do 735; 13 do 287; 15 do 618.

An officer may act upon information, not under oath, of his neighbors in whom he has confidence, and if he acts with the belief that the arrest is necessary and detains the felon a reasonable time for the purposes of fair investigation as to the charge, he is not liable for false imprisonment, and it is for the officer to judge of the necessity of an immediate arrest to prevent escape, and for the jury alone to say whether he had cause to suspect the party charged, guilty, and if he act in good faith he is not chargeable, whether the party arrested turn out to be guilty on examination or not. *Rohan* v. *Swaine*, 5 Cushing, 281; 1 Hale's P. C. 587; Dane's Abrid. 588; Bacon's Ab. Constable (C.;) *Samuel* v. *Payne*, 1 Doug. 359; *Beckworth* v. *Philby*, 6 Barn. & Cress. 635.

The officer may, after arrest, discharge the prisoner without taking him before a magistrate. *McClougan* v. *Clayton and Reding*, 3 English Com. Law 190; 24 do 673.

Proof of reasonable suspicion of felony where a private person imprisons, goes in mitigation of damages, and where such person acts in good faith, nominal damages only should be allowed. 12 English Com. Law, 617.

Mr. JOHN CLARK, for the same appellees, in addition, cited 2 Hale's Pleas of the Crown, 76, 80; 1 Russ on Crimes, 593, 595; Law Reporter, 169, 173, N. S. 6 Term R. 315; section 40 of the Criminal Code.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of trespass, for an assault and false imprisonment, and a verdict and judgment for the defendants. To reverse this judgment the plaintiff appeals, and makes the point, that the verdict was contrary to the law and the evidence, and a new trial should have been granted.

The facts show the arrest of the plaintiff, without any warrant, by private persons, in the county where he lived, and taken to another county, and there confined in jail in a filthy cell, and discharged without examination.

Writers on criminal law and proceedings say, that, in general, an arrest may be made in three ways: by warrant; by an officer without a warrant; by a private person without a warrant.

A warrant, under our law, is usually issued by a justice of the peace, on a complaint made to him, under oath, that a criminal offense has been committed in his county. The warrant for the arrest is usually directed to all sheriffs, coroners and constables within the State. If the criminal be arrested, he is to be proceeded against as provided by secs. 203–207 of the criminal code. Gross' Stat. The execution of the warrant for the arrest is confined to the county in which it issues, except when the offender shall cross the line into an adjoining county the officer may pursue him into such adjoining county, and there make the arrest. Sec. 207 ib.

The magistrate issuing the warrant may make an order on it authorizing a person (to be named in the warrant) to execute it, and he may execute it anywhere in the State, by apprehending and conveying the offender before the magistrate who issued the warrant, or before some other justice of the peace of the same county. Sec. 208.

The law enjoins upon all persons making an arrest to acquaint the party named in the warrant, either before or after his arrest, with the substance of the warrant, if requested. 1

Ch. Crim. Law, 51; 2 Hawkins' Pleas of the Crown, Ch. 13, sec. 28.

After making the arrest, it is the duty of the officer to convey the party, as soon as possible, before the magistrate, according to the import of the warrant, (2 Hale's Pleas of the Crown, 119) and in conveying him the officer should use no more restraint than is necessary to prevent his escape.

As to the arrest by an officer without a warrant, it is settled, that a justice of the peace may apprehend, or cause to be apprehended, by verbal order merely, any person committing a felony or breach of the peace in his presence. 1 Hale's P. C. 86. But if it is committed in his absence, he must issue a warrant in due course of law to apprehend the offender. 1 Ch. Cr. Law, 24, 25. Sheriffs and coroners and constables may, by the common law, apprehend any felon within their county without warrant. 4 Bl. Com. 289; 1 Hale's P. C. 587. In case of a felony actually committed, a constable may, upon probable suspicion, arrest the party; but if the suspicion does not arise in his own mind, he should inquire scrupulously into the causes of the suspicion, and he will be justified in making the arrest, should it afterwards appear that no felony had been committed, provided he had reasonable grounds to suspect the party arrested—such grounds as should influence the conduct of a prudent and cautious man under the circumstances. This by the common law; but under our statute it is made the duty of a constable, when any felony or breach of the peace is committed in his presence, forthwith to apprehend the person committing it, and bring him before some justice of the peace to be dealt with according to law. Gross' Stat. 401, sec. 88.

In the case of *Board* v. *Dodds et al.*, 43 Ill. 95, which was an action for an assault and false imprisonment, it was held, that a plea, intended as a justification by the officer making the arrest averring that the plaintiff was an idle person, and consorted with persons of known bad character, and that a larceny had been recently committed in the neighborhood,

and that he had been informed the plaintiff was accessory to the crime, and that he believed, and had probable cause for believing, that he was guilty, and had, therefore, arrested him, and taken him before two justices of the peace, and had him examined on the charge, and that the defendant was a peace officer, would be a good plea of justification. To authorize an officer without warrant to arrest a person on suspicion that he is guilty of crime, there must be such circumstances of suspicion that the party arrested was guilty as renders it probable that the accused had committed the crime; and it was further said, a private person had no right to arrest on mere suspicion—that a mere suspicion of guilt does not authorize all persons, without a warrant, to make an arrest. To prevent breaches of the peace, and perhaps bloodshed, a private individual should not be justified unless a crime has been committed, and the person arrested is shown to be the guilty party. A constable, having reasonable ground to suspect a felony has been committed, is authorized to detain the suspected party until inquiry can be made by the proper authorities. Whether or not there was reasonable ground for suspicion, is a mixed question of law and fact—the circumstances to show it reasonable being the fact, but whether, admitting the facts to be true, they amount to a justification, being a question of law.

As to an arrest by a private person, it is held, that any private person who is present when a felony is committed, is bound by law to arrest the felon, on pain of fine and imprisonment if he escape through his negligence. This is the common law. 2 Hawkins' Pleas of the Crown, 74. Yet we should hardly consider, under our statute and usual practice in such cases, that this obligation rests upon a private individual, though it would be, doubtless, his duty to attempt an arrest if one could be made without injury or peril to himself. Our criminal code provides that every male person above eighteen years of age must go to the assistance of an officer having criminal process for the arrest of an offender, and to aid in

retaking a person who, after having been arrested or confined, may have escaped, and to aid in preventing any breach of the peace or the commission of any criminal offense, when lawfully required by the officer, or by any judge, justice of the peace, or other officer concerned in the administration of justice, under penalties for his refusal, in any sum not less than ten dollars, nor more than fifty dollars. Gross' Stat. 211, sec. 140.

When a private person has apprehended another for felony, he may either deliver him into the hands of a constable, or he may carry him to any jail in the county; but the safest course is to cause him, so soon as convenience will permit, to be brought before some justice of the peace, by whom the prisoner may be examined and bailed, or committed to prison. Ib.

The plea in this case was, not guilty, with leave to give special matter in evidence; and it was proved, by Harvey, Parker and Murray, that shortly before the arrest of plaintiff, several burglaries had been committed by some one or more persons, near Eureka, and valuable property stolen, and that plaintiff had been seen in Crugers, with his brother William, Perry Chambers and Mishler, noted and suspected characters, the Sunday preceding the burglaries, and evidence was adduced showing the plaintiff had a bad character by report, though none was adduced against him as a man of truth and veracity. We do not think that single circumstance afforded probable ground for his arrest by the defendants, neither of them having a warrant, and neither of them an officer of the county authorized to make an arrest without a warrant.

What occurred after the arrest, transporting him to a foreign county and there confining him in a filthy cell, and discharging him without an examination, the arrest being unjustifiable, were proper to be considered by the jury in estimating the damages. The conduct of Towers, who had no more official authority in Woodford county than any private citizen of another State, can not be justified on any principle of law

with which we are familiar. Being a police constable in Peoria, he usurped authority in Woodford, and ought to be punished for it. Detectives, as they are called, have no more right to disregard the law than any other person, nor, under the guise of authority, play "their fantastic tricks."

We are of opinion, the arrest of the plaintiff was illegal, and the verdict contrary to the law and the evidence. And if the arrest was legal, they did not proceed according to law, and take him before a magistrate for examination, but conveyed him to another county, and there imprisoned him in the county jail, in a filthy cell, thus invading one of the dearest and most sacred rights of the citizen, secured to him by the great charter of our land. Failing to take him before a magistrate of the county where arrested, hand-cuffing him, transporting him against his will to another county, and there imprisoning him in a filthy cell, is such evidence of malice, there being no probable cause to suspect him of guilty participation in crime, as to require the jury to award to him some damages.

The judgment must be reversed and the cause remanded, that a new trial may be had.

*Judgment reversed.*